UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALEXANDER PANEK,

        Plaintiff,

    v.            5:06-CV-538
                  (FJS)
UNITED STATES OF AMERICA,

        Defendant.
_____

APPEARANCES        OF COUNSEL

**ALEXANDER PANEK**
**08311-052**
FCI Sandstone
P.O. Box 1000
Sandstone, Minnesota 55072
Plaintiff *pro se*

**OFFICE OF THE UNITED**    THOMAS A. CAPEZZA, AUSA
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
Room 218
445 Broadway
Albany, New York 12207-2924
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

  Currently before the Court are the Government's motion for summary judgment and Plaintiff's cross-motion for summary judgment.[1]  Both of these motions relate to the forfeiture

---

[1] Plaintiff originally filed this action as a motion pursuant to Rule 41(e) (now Rule 41(g)) of the Federal Rules of Criminal Procedure for return of property in the related criminal matter,
                        (continued...)

...

judgment in the underlying criminal case, *United States v. Panek*, 5:97-CR-446. In that judgment, the Court noted, among other things, that, "[p]ursuant to 21 U.S.C. § 853, [Alexander Panek] shall forfeit to the United States the items detailed in the Preliminary Order of Forfeiture previously ordered by the Court and detailed in the Memorandum-Decision and Order dated June 22, 2000." *See id.* at Dkt. No. 502.[2]

---

[1](...continued)
*see United States v. Panek*, 5:97-CR-446, Dkt. No. 568. On appeal, the Second Circuit concluded that this Court had "correctly held that a motion pursuant to Federal Rule of Criminal Procedure 41(e) made after termination of criminal proceedings against a defendant should be treated as a civil action." *See United States v. Panek*, 5:97-CR-446, Dkt. No. 608. On remand, this Court opened a civil case in which Plaintiff's Rule 41(e) motion serves as his complaint. *See* Dkt. No. 1. In this motion/complaint, Plaintiff seeks the return of the following property, which he argues that the record in *United States v. Henry*, 325 F.3d 93 (2d Cir. 2003), should have reflected the Government had seized:

> 1. $8,900.00 in United States currency, recovered on December 2, 1997, from the residence of Alexander Panek at 610 North Lowell Ave Syracuse
>
> 2. A Black 1987 Camaro Z-28 Convertible, VIN # 1G1FP31FOHN154676
>
> 3. A White 1989 Ford flatbed tow truck, VIN # 2FDLF47M6KCA14729, New York Registration Number 1424 TH
>
> 4. A Green 1968 Dodge Super "B," VIN # WM21J8A279793
>
> 5. A Brown 1987 Harley Motercycle, [sic] VIN # 1HD4CAM1XHY113345, New York Registration Number 1741 L
>
> 6. A 1994 Yamaha Jet Ski, VIN # YAML5289A494

*See id.* at 2.

[2] In that Partial Preliminary Order of Forfeiture, the Court directed the forfeiture of the two vehicles – a 1993 Lincoln Mark VIII and a 1981 Wilderness RV Camper – that the jury had
(continued...)

Plaintiff appealed his conviction and sentence on several grounds. For purposes of these motions, the relevant issue involves Plaintiff's argument that this Court erred when it denied his request for *pro tanto* credit against all funds that the Government had already collected from his jointly-and-severally-liable co-conspirators.

In its decision resolving this aspect of Plaintiff's appeal, the Second Circuit found that the issue of whether Plaintiff should be given *pro tanto* credit for the amounts that the Government had already collected from his co-conspirators was "not fit for judicial resolution at this time because the government has not collected more than $400,000 from [Plaintiff] and [his] co-conspirators." *United States v. Henry*, 325 F.3d 93, 108 (2d Cir. 2001) (citing *United States v. Wilson*, 244 F.3d 1208, 1213-14 (10th Cir. 2001)). The court explained that

> the government represents that it has collected only $176,274.28 from William Henry. While it is unclear whether the government has seized any of [Alexander Panek's and Edmund Panek's] assets in partial satisfaction of their liability, the government also represents that the total forfeitures in this case do not exceed $400,000. Thus, even were Henry's forfeitures credited against [Alexander Panek's and Edmund Panek's] liability of $400,000, the government could still collect from [them] $223,725.72 minus the value of the assets, if any, they already have forfeited. Accordingly, [Alexander Panek and Edmund Panek] have no justiciable claims unless and until the government attempts to seize

---

²(...continued)
found constituted proceeds and ordered that Plaintiff and his brother and co-Defendant Edmund Panek were jointly and severally liable for the forfeiture money judgment of $400,000. The Partial Preliminary Order of Forfeiture also provided that "[t]he $400,000.00 as proceeds of the narcotics conspiracy is no longer available and the below listed property is held by or on behalf of defendants Alexander Panek and Edmund Panek." *See* Partial Preliminary Order of Forfeiture at ¶ 4. Therefore, the Court authorized the Government, pursuant to 21 U.S.C. § 853(p), "to seize the below listed property and the below listed property is hereby forfeited to the United States as substitute assets in partial satisfaction of the $400,000.00 money judgment for forfeiture . . . ." *See id.* Among the listed items is the property that Plaintiff seeks to have returned to him in this action.

>           assets from them that would place the total forfeiture amount in
>           this case over $400,000.

*Id.* at 108-09.

Plaintiff then filed his Rule 41(e) motion – which serves as the complaint in this action – for return of property, arguing that the threshold for ripeness that the Second Circuit had identified had been met. To support this argument, he asserted that, in calculating the total assets forfeited to date, the Court should include not only the $176,274 that the Government had seized from his co-Defendant Henry in the underlying criminal action, *see United States v. Panek*, 5:97-CR-446, but also the currency totaling $113,744 that the Government had seized from his co-Defendant Henry's residence in a separate pre-indictment administrative proceeding in 1996, the assets that the Government had seized in Arizona in 1996 from unindicted co-conspirator Duane Hudson, and any other assets that the Government had seized from any of his co-Defendants and/or unindicted co-conspirators.

In a Memorandum-Decision and Order dated September 1, 2004, the Court rejected Plaintiff's arguments. First, the Court held that it "lack[ed] subject matter jurisdiction to review the seizure of Mr. Henry's property [in the separate administrative proceeding] because the Court may not review the merits of an administrative forfeiture decision once the administrative process is underway." *See* 5:97-CR-446, at Dkt. No. 592 at 6 (citation omitted). Furthermore, the Court found that Plaintiff was "incorrect that the Government should apply $400,000.00 seized from co-Defendant Mr. Sanatamaria to [his] liabilities, as the Court's docket reflects that Mr. Santamaria was solely, not jointly, liable for that amount. Likewise, Duane Hudson was never a defendant in this action, and so any funds that the Government seized from him have no

bearing whatsoever on [Plaintiff's] liability." *See id.* at 7.  Therefore, the Court denied Plaintiff's Rule 41(e) motion because it was not ripe.  *See id.*

Plaintiff appealed that decision.  In a summary order dated December 30, 2005, the Second Circuit affirmed the decision in part and vacated in part and remanded the case to this Court for further proceedings.  In pertinent part, the court vacated and remanded the decision insofar as this Court had accepted unsworn factual assertions in the Government's responding papers to dispose of Plaintiff's claims.  Thus, the court vacated the Court's denial of Plaintiff's motion and remanded to allow the action to go forward, with the suggestion that the Government move, if it wished, for summary judgment.  The Government has taken the Second Circuit's advice and now moves for summary judgment, once again arguing that Plaintiff's claim is not ripe.

## II. DISCUSSION

In support of its motion for summary judgment, the Government argues that Plaintiff's claim for *pro tanto* credit is still not ripe for review because the $400,000 threshold has not been reached.  The Government also notes that "[i]t is highly unlikely that the issue will ever ripen since the government has forfeited a total of $285,335 and is unaware at this time of any additional forfeitable assets."  *See* Government's Memorandum of Law at 13 n.3; Affidavit of Thomas A. Capezza, sworn to November 16, 2007, at ¶¶ 3-5.

In response and in support of his cross-motion, Plaintiff offers two arguments.  First, he asserts that the Court should grant his motion because the $400,000 jury finding is statutorily unenforceable against him because joint and several liability does not apply to the criminal

forfeiture statute, 21 U.S.C. § 853. To support this argument, he relies primarily on a colloquy that occurred between Judge Pooler and his counsel at oral argument before the Second Circuit. He submits that this colloquy demonstrates that Judge Pooler does not believe that the concept of joint-and-several liability is applicable to criminal forfeiture actions. *See* Plaintiff's Memorandum of Law at 11-12.

Second, he argues, once again, that, in determining whether the $400,000 threshold has been met, the Court should take into consideration the amount of money and property that the Government has seized from all parties, including unindicted co-conspirators.

### A.     Joint and several liability

Plaintiff's argument that joint and several liability does not apply to the criminal forfeiture statute, 21 U.S.C. § 853, has no merit. In *United States v. Benevento*, 836 F.2d 129 (2d Cir. 1988) (per curiam), the Second Circuit affirmed the decision of the district court and explicitly agreed with the district court's construction of 21 U.S.C. § 853 to impose joint and several liability. *See id.* at 130. The district court had held that "[t]he imposition of joint and several liability on a forfeiture is consistent with the language of the statute." *United States v. Benevento*, 663 F. Supp. 1115, 1118 (S.D.N.Y. 1987). The court reasoned that

> [t]he phrase "any property constituting . . . any proceeds obtained, directly or indirectly, as a result of such violation" under its clear meaning is not limited to property acquired solely or wholly by the defendant but encompasses property derived by the defendant indirectly from those who acted in concert with him in furthering the criminal enterprise and produced the property derived from the violation.

*Id.* (internal footnote omitted).

Thus, the district court concluded that "the sweep of the statute is broad enough to impose joint and several liability upon those who engaged in and furthered the criminal enterprise that produced the funds subject to forfeiture." *Id.*

Accordingly, based upon the holding in *Benevento* and its progeny, the Court denies Plaintiff's cross-motion for summary judgment to the extent that he bases his motion on the argument that the money judgment is null and void because joint and several liability does not apply to the forfeiture statute.

### B.   Ripeness of Plaintiff's claim for return of property

In *United States v. Saccoccia*, 62 F. Supp. 2d 539 (D.R.I. 1999), the court addressed the issue of the extent to which one of the defendants was entitled to credit for amounts that the government might have forfeited from others.  The court began its analysis by stating that "a distinction must be drawn between amounts forfeited from *un*indicted co-conspirators . . . and amounts forfeited from those co-conspirators who were indicted and convicted . . . ." *Id.* at 542. The court explained that

> [e]ach defendant is liable for the full amount of the forfeiture judgment entered against him or her, but "[t]he government can collect its $136 million only once." . . . Accordingly, the amount that [this defendant] is required to forfeit must be reduced by amounts already forfeited by his co-defendants pursuant to the forfeiture judgments entered against them in this case.

*Id.* (footnote and internal quotation omitted).

The court also noted, however, that "[a]ssets belonging to the convicted co-defendants that may have been forfeited for reasons unrelated to the forfeiture judgments in this case would

not reduce [this defendant's] liability because the shared liability encompasses only the $136 million for which these defendants are jointly responsible as a result of the conspiracy for which they were convicted." *Id.* at n.1.

On the other hand, the court found that the defendant was "not entitled to credit for any amounts that may have been forfeited by *un*indicted co-conspirators." *Id.* The court reasoned that, because "no forfeiture judgments were entered against the unindicted [co-conspirators], they do not share in [this defendant's] liability under the $136 million forfeiture judgment. Moreover, any amounts that might have been forfeited by those individuals could not have been forfeited pursuant to that judgment." *Id.* at 542-43. Therefore, the court concluded that, "even assuming, *arguendo*, that the government has forfeited amounts belonging to unindicted co-conspirators, those amounts would not reduce [this defendant's] liability for the judgment entered against him in this case . . . ." *Id.* at 543.

The Court adopts the well-reasoned opinion of the *Saccoccia* court and holds that, although Plaintiff may be entitled to credit for any amounts that the Government has, or in the future will, forfeit from Plaintiff's co-Defendants as a result of the $400,000 forfeiture judgment that was entered against them in the underlying criminal case, he is not entitled to credit for any amounts that the Government may have forfeited from unindicted co-conspirators or any amounts that the Government may have forfeited from his co-Defendants that do not relate to the $400,000 forfeiture judgment that was entered against them in the underlying criminal action. Therefore, taking into account the value of the relevant assets that the Government has forfeited – $285,335 – it is clear that Plaintiff's claim for return of property is still not ripe for adjudication.

## III. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Government's motion for summary judgment on the ground that Plaintiff's claim for return of property is not ripe is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: December 4, 2007
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge